IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JONATHAN ESTEP, an individual, | Case No. 3:16-cv-02214-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| FOREVER 21 RETAIL, INC., a foreign business corporation, doing business as FOREVER 21, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

    Jonathan Estep ("Estep") brings this action against his former employer, Forever 21
Retail, Inc. ("Forever 21"), alleging a single claim for disability discrimination pursuant to
Oregon Revised Statute ("ORS") § 659A.112, arising from Forever 21's termination of Estep's
employment on June 30, 2016.[1] (ECF No. 1.)

    Pending are Estep's Motion to Amend Schedule to Allow Leave to File an Amended
Complaint ("Leave to Amend") (ECF No. 17), to include additional factual allegations and a

---

[1] Forever 21 removed this action from Multnomah County Circuit Court based on
diversity of citizenship. 28 U.S.C. §§ 1332, 1441.

prayer for punitive damages, and Forever 21's Motion for Summary Judgment (ECF No. 20).
For the reasons that follow, the Court grants Estep's Motion for Leave to Amend, and denies
Forever 21's Motion for Summary Judgment.

## BACKGROUND

In July 2012, Forever 21 hired Estep as a co-store manager in Fresno, California.
(Jonathan Estep Decl. ¶ 4, June 6, 2018.) Forever 21 promoted Estep to store manager in 2013,
and to district manager of the Washington State district in 2014. (Estep Decl. ¶ 5; Jennifer
Warberg Decl. Ex. 1 (Jonathan Estep Dep. 37:12-14, Apr. 24, 2018 (hereinafter "Estep Dep.")),
May 25, 2018.) In November 2015, Forever 21 temporarily assigned Estep to oversee additional
stores in the Sacramento district. (Estep Dep. 41:16-21.) In December 2015, Jane Ha ("Ha"),
Vice President Store Operations, assumed responsibility for all domestic operations and, in so
doing, became Estep's manager. (Warberg Decl. Ex. 2 (Jane Ha Dep. 11:8-12:13, Apr. 25, 2018
(hereinafter "Ha Dep."))).

In 2015, Forever 21 began an intensive review of its United States store operations due to
overall declining domestic performance. (Ha Dep. 141:8-17; Warberg Decl. Ex. 3 (Karin
Durham Dep. 29:14-30:1, Apr. 24, 2018 (hereinafter "Durham Dep."))). As part of that review,
senior management began taking a closer look at underperforming management at the district
level, including Estep. (Ha Dep. 35:18-36:8, 143:10-144:3.) In addition, near the end of 2015,
Forever 21's founder and Chief Executive Officer, Do Won Chang ("CEO Chang"), became
more involved in day-to-day operations. (Estep Dep. 238:1-19.)

CEO Chang "identified a hundred bottom stores" for his senior leadership team to visit
between November 9 and November 20, 2015. (Ha Dep. 143:10-144:3.) Although Ha did not
visit any of Estep's stores, she concluded that the condition of Estep's Pine Street store was "far
below company expectation." (Ha Dep. 33:11-18; *see also id.* at 35:18-22 ("I was concerned

when I viewed the photos in November during the executive meeting."); *id.* at 100:15-25) (confirming that the condition of the Pine Street store "was the worst [she'd] seen in 18 years"); *see also* Estep Dep. 97:14-18 (acknowledging that the Alderwood store was "not to [company] standard"))).

In late 2015, Ha's assessment of district level operations revealed other examples of Estep's alleged substandard performance. In particular, by December 2015, Forever 21 identified Estep as one of fifteen "Bottom Performers" among forty-plus district managers. (Estep Dep. Ex. 9 (stating that Estep was "[c]hallenged with holding others accountable. Stores are operationally/visually challenged. Does not exude leadership/presence. Needs support with performance management.")).

On December 14, 2015, Ha sent an email to the district managers of the bottom one hundred stores requesting photos of various areas within the store. (Estep Dep. Ex 7.) Estep was the district manager for six of the bottom one hundred stores. (*Id.*; Estep Dep. 108:18-110:24.) When asked about receiving the December 14 email, Estep stated:

> Q.      What did you do, if anything, in response to receiving this email?
>
> A.      I can't remember, quite honestly. By December 14th, I was extremely sick. I'm not quite sure of what actions.
>
> . . . .
>
> Q.      Did you ever communicate to Ms. Ha that any challenges that may have been occurring in your district were a result of illness?
>
> A.      I believe I -- if I remember correctly, I didn't specifically state that it was – the challenges we spoke of with Ms. Ha were kind of bigger picture of product support, things that we needed from the previous regional team that we haven't been delivered.

> So it was more large scale, not personally -- it was more large-level conversation, not one-on-one of what personally I needed for the market.
>
> Q. So you never said to her in person or by phone or by e-mail, "Hey, there are challenges in my district, and part of the reason for that is I'm ill"?
>
> A. Not at that time. I did e-mail her that I was sick. But at the time, I was the only DM. I was the only person in that market besides Jesus because Casie was out. I was supporting Sacramento.
>
> So, for me, I just was power -- trying to power through it, the sickness, because there was really nobody to turn to at that time. Because I hadn't had a real conversation with Jane Ha.
>
> The regional team who were my support team were all gone. So there was -- felt at that time no one to really turn to. And there -- and so I never had that conversation.

(Estep Dep. 110:12-16, 123:9-124:12.)

On December 21, 2015, Regional Visual Manager Lisa Castro ("Castro") expressed concern to Ha about the "NW" region "as a whole" because "stores are doing their own thing." (Estep Dep. Ex. 8.) Around this same time, Chief Marketing Officer Linda Chang asked Ha why a handful of stores, including two Estep managed, were still "not able to pick up." (Estep Dep. Ex. 10.)

According to Forever 21, based on the executive visits and subsequent reports, Ha decided to terminate Estep's employment:

> Q. And at what time period were you looking at for the stores in his district that were causing you concern?
>
> A. Like I said, it started from the November executive visit. The -- before the executive visit happened, Mr. Chang identified a hundred bottom stores as stores that we needed to visit.

So that's the starting from the CEO identifying Jonathan Estep's store amongst the other rest of the stores as a concern store. So we needed to go out and determine what is happening, and that's the starting point of -- of seeing the stores. As I said, the -- the presentation and condition was not anywhere near where it needs to be. That's where the concern came from. That's why you will see Jonathan Estep's name on Linda's e-mails a lot. She sees the photos that I'm looking at. She's calling out for reports to look at in different angle and to see if -- you know, what we can do to improve the business on these districts that were struggling.

Q.    And that's why you agreed to terminate him?

A.    I think -- to protect the company, to have somebody that could own the business, I think that was the best decision.

(Ha Dep. 143:10-144:7.) However, Ha did not terminate Estep in December 2015:

Q.    Okay. Do you recall reading these observations at the top of the page about Mr. Estep?

A.    Yes.

Q.    And at the time that you read this, did you do anything in response to these observations?

A.    No.

Q.    Why not?

A.    Taking over US at that time with the 50-some-odd district managers, I had to assess where I'm going to address with priority. So, at that time, I did not do anything.

Q.    So those comments don't make [Plaintiff] a high priority?

A.    There's a high priority amongst this bottom performers, any of them.

. . . .

Q.    Okay. So if you have a high priority store with a district manager who's on your radar, what kind of investigation did you do into why this particular store and this particular district manager was not performing up to what you thought standards were?

> A. Yeah. So when you – when overnight you take over 540 stores, I don't go into individual stores. I know that the – based on the store visits, which one needs to be a priority. And one of – one of a few district managers on the radar was Jonathan Estep. As I mentioned, we don't come up with, you know, talent pool, you know, having that conversation that day to assess the store. We assess the district manager. We assess the talent pool first and then determine. But we have, like I said, 540 stores. One store is not going to be on first priority the next day.
>
> Q. Even if it's the worst store you've seen in 18 years?
>
> A. It's one of the worst stores, yes.

(Ha Dep. 32:11-25, 134:3-21; *see also* Estep Dep. 45:19-24 (acknowledging that in late 2015 Ha "was really just investigating, trying to figure out what direction we needed to go[]"); *id*. at 46:2-7 (acknowledging that during the "busiest season" Forever 21 went "from a market where we had all these subtiers of support to now no support" and it seemed Ha "was really just trying to assess what steps needed to happen")). Ha's first termination of a district manager for poor performance occurred in February 2016. (Ha Dep. Ex. 47.)

Although Ha believed in late 2015 that Estep's poor performance was cause for termination, she took no action before Estep began a protected leave of absence. Specifically, Ha testified she waited to terminate Estep until he exhausted his leave in June 2016:

> A. So when -- when the store visit happened in November, we identified Jonathan Estep stores and Jonathan as a DM that we wanted to make sure that the opportunity is getting addressed.
>
> And from there, after November, the additional information was coming in regarding the condition of the store, whether that's -- you know, the photos or their finding more opportunity within the store.
>
> At that time, Jonathan Estep was considered as a terminable DM based on the condition of the store. That conversation took place with HR. And later on, very shortly after that, he went on a leave of absence.

> Therefore, I want to make sure that I do the right thing with partnering up with HR and in making sure the leave of absence employees are done -- employees are addressed in -- in more of a partnership with HR and legal.
>
> So therefore when June came -- June -- end of June or middle of June, when that came, Holly [Hall] mentioned that he exhausted his leave of absence, that we can go ahead and release him is when I agreed that we could -- that I agreed with her. So the termination would have been considered much earlier if he didn't go on a leave of absence based on the condition of the store.

(Ha Dep. 156:8-157:7.)

In December 2015, Estep requested two personal days from work because he was not feeling well. (Jungmin Kim Decl. Ex. A, May 25, 2018; Ha Dep. Ex. 55 (informing Ha that Estep could not work because he has "been sick for the past few days, and [was] under Drs. care"); id. at Ex. 56 (informing Ha that "the Dr. requested that I stay home 1 more day")). Estep did not request any other sick leave during December 2015. (Kim Decl. Ex. A.)

At the end of January 2016, Estep informed Ha that he would be on medical leave for an unspecified reason until February 16, 2016. (Ha Dep. 62:6-24, Ex. 58.) Several months passed before Ha learned of Estep's cancer diagnosis. (Ha Dep. 48:22-49:11.)

The parties agree that Estep was on approved leave under the Family and Medical Leave Act ("FMLA") from January 25, 2016, to April 18, 2016, and unpaid leave until June 20, 2016. (Compl. ¶¶ 16-17; Estep Dep. 47:3-10.) In March 2016, Forever 21 replaced Estep as district manager in Washington. (Ha Dep. 87:11-15; Estep Decl. ¶ 18.) In June 2016, Estep provided new documentation seeking additional "estimated" leave until October 2016. (Rebecca Cambreleng Decl. Ex. 28, June 7, 2018.) Ultimately, Estep could not return to work full-time until January 1, 2017. (Estep Dep. 174:6-25.)

In June 2016, while Estep was out on unpaid medical leave, Holly Hall ("Hall"), Senior

Manager, Stores Human Resources, advised Ha that Estep could now be terminated. (Ha Dep.

157:1-4.) Hall's manager, Karin Durham, testified that Forever 21 terminated Estep for poor

performance:

> Q. So what are you basing your opinion [that Estep was
> terminated for cause] on again?
>
> A. The communication to me from Jane as the business owner.
> His performance was under scrutiny early in the fall of that
> year.
>
> . . . .
>
> Q. So you've been CCed on these e-mails starting in early
> 2016 regarding Mr. Estep's performance. Should an
> investigation have been undertaken regarding the
> performance?
>
> A. The investigation was undertaken – his – the – the visibility
> to his market was happening prior to the – this period of
> time that you're referring to.

(Durham Dep. 44:11-14, 44:24-45:5.) Estep's termination occurred shortly after Ha learned

Estep was on medical leave because he had cancer. (Ha Dep 49:4-9 (testifying that she learned at

the beginning of the second quarter, i.e., June 2016, that Estep had cancer)).

Although Ha recommended Estep's termination, the human resources and legal

departments approved the decision. (Ha Dep. 86:20-87:10 (explaining that once she determines

that a district manager is not meeting expectations, "it is taken up with the legal department,

employment, and review process" and the company's final decision "is filtered down to me")).

Ha testified that the decision to terminate Estep was the result of his earlier performance issues:

> Q. Did she say why? Did Ms. Hall tell you why she wanted to
> release him?
>
> MS. WARBERG: Objection. Misstates prior testimony.

> A.  What I recall is she's been partnering up with me to see the photos and opportunity that we're seeing. So -- and -- and partnering up with H -- partnering up with legal and Karin Durham. That they know that -- they knew the state of the store condition being very poor. And I believe the company, from HR, benefit, legal provided the benefit that was needed at that time, and our findings were greater than just photos that we've seen in November. Therefore, the decision was made at that time to release him. She didn't go into too much detail because we knew the information. We shared information.

(Ha Dep. 93:11-94:1; *see also id.* at 156:8-157:7 ("At that time [late 2015], Jonathan Estep was considered as a terminable DM based on the condition of the store. That conversation took place with HR. And later on, very shortly after that, he went on a leave of absence.")). Hall terminated Estep's employment on June 30, 2016, citing the reason for separation as "Involuntary – Layoff/Position Elimination." (Estep Decl. ¶ 19; Cambreleng Decl. Ex. 30.)

## DISCUSSION

## I.    FOREVER 21'S MOTION FOR SUMMARY JUDGMENT

### A.    Legal Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of that party. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

## B.    Analysis

Estep alleges a single claim for disability discrimination in violation of ORS § 659A.112.[2] Specifically, Estep contends that Forever 21 took an adverse employment action by "failing to engage in the interactive process for disability accommodation and terminating his employment . . . ."[3] (Compl. ¶ 29.)

To establish a *prima facie* case of discrimination under § 659A.112, a plaintiff must show that: (1) he is a qualified individual with a disability, (2) he suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and his disability. *Rogers v. Oregon Trail Elec. Consumers Co-op., Inc.*, No. 3:10-cv-1337-AC, 2012 WL 1635127, at *22 (D. Or. May 8, 2012). At the *prima facie* stage, the plaintiff's required proof "is minimal and does not even need to rise to the level of a preponderance of evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Curley v. Cty. of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014) (setting forth burden shifting framework). If the defendant provides a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the

---

[2] ORS § 659A.112(1) states that an employer may not "bar or discharge from employment . . . on the basis of disability." Section 659A.112(2)(e) further provides that "an employer violates subsection (1) if the employer . . . does not make reasonable accommodation to the known physical or mental limitations of a qualified individual with a disability[.]"

[3] For the purpose of this motion, the Court considers Estep's allegation that Forever 21 failed to engage in the interactive process in connection with his reasonable accommodation allegations. *See Wessels v. Moore Excavation, Inc.*, No. 3:14-cv-1329-HZ, 2016 WL 1589894, at *15 (D. Or. Apr. 18, 2016) (dismissing plaintiff's "failure to engage in the interactive process claim as a stand-alone claim and consider[ing] the interactive process allegations as part of the reasonable accommodation claim"); *but see Austin v. Wal-Mart Stores, Inc.*, No. 3:07-cv-1306-HA, 2008 WL 4936480, at *10 (D. Or. Nov. 14, 2008) (finding that Oregon law provides a "stand alone cause of action for failure to engage in the interactive process").

plaintiff to prove pretext. The plaintiff may establish pretext by creating a disputed factual question regarding the defendant's reason or by introducing evidence of a discriminatory motive. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (finding that the plaintiff failed to show "either a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence" (quotations and citation omitted)).

For purposes of this motion only, Forever 21 does not dispute that Estep "became disabled at or near the time he went out on FMLA leave on January 25, 2016." (Def.'s Mot. Summ. J. 11.) Forever 21 argues, however, that Estep is unable to demonstrate that he was a qualified individual who Forever 21 terminated because of his disability. (*Id.*) Accordingly, the Court must determine if there are disputed factual issues regarding whether (1) Estep was a qualified individual at the time he was terminated, and whether (2) Forever 21 terminated Estep for a discriminatory reason.

### 1.    Qualified Individual

Under Oregon law, "an individual is qualified for a position if the individual, with or without reasonable accommodation, can perform the essential functions of the position." ORS § 659A.115; *see also Huitt v. Optum Health Serv.*, 216 F. Supp. 3d 1179, 1188 (D. Or. 2016) (noting that a qualified individual must be able to perform the essential functions of his position at the time of termination, with or without a reasonable accommodation). Thus, the issue for the Court is whether Estep could perform the essential functions of district manager with or without a reasonable accommodation.

Forever 21 argues that at the time of his termination, Estep could not perform his job duties because he was not meeting company standards and the only remedy for not meeting company standards is to lower the standards, which does not qualify as a reasonable

accommodation, and Forever 21 further argues that a year of medical leave is not a reasonable accommodation. (Def.'s Mot. Summ. J. 12-13.)

In response, Estep argues that there were "no documented issues with his performance until *after* he [went] out on leave of absence for cancer treatment." (Pl.'s Resp. 17 (emphasis in original)). Estep further argues that his request for additional time to recover from cancer was reasonable, but Forever 21 "used his request for an accommodation as a reason to terminate his employment." (Pl.'s Resp. 18.)

### a. Could Estep Perform the Essential Functions of District Manager?

Forever 21 maintains that prior to becoming ill, Estep was unable to perform the essential functions of district manager. (Def.'s Reply 8 ("It is undisputed that Plaintiff was not performing the essential functions of his job before he became disabled, before he went out on leave, and before Ms. Ha became aware that Plaintiff had cancer.")). In support of this argument, Forever 21 relies on evidence of Estep's alleged poor performance. Specifically, by late October, Estep's Seattle Pine Street store was a bottom-performing store. (Ha Dep. 128:9-25, 143:10-144:3; Ha Dep. Ex. 63.) Additionally, Estep acknowledged that the Alderwood Mall store was also not meeting company standards. (Estep Dep. 97:14-18; Estep Dep. Ex. 4.) In November 2015, following the executive visit of Estep's Pine Street store, Ha determined that it was appropriate to terminate Estep. (Ha Dep. 93:15-24 (stating that by November 2015 a decision was made to terminate Estep based on poor performance), *id* at 134:3-21 (stating that one of Estep's stores was the worst she had seen in 18 years and as a result Estep was "one of a few district managers on the radar"), *id.* at 143:10-144:7 (stating that by November 2015, Ha agreed to terminate Estep), *id.* at 156:6-157:7 (stating that "after November" Estep "was considered as a terminable DM"), *id.* at Ex. 46 (describing Estep as "Challenged with holding others accountable. Stores are

operationally/visually challenged. Does not exude leadership/presence. Needs support with performance management."); *see also* Estep. Dep. Ex 7 (listing six of Estep's stores in the bottom 100 as of December 2015)). According to Forever 21, the "undisputed facts demonstrate that [Estep] was failing to perform the essential functions of his job before he got sick, and the company knew it." (Def.'s Reply. 3; *see* Estep Decl. ¶¶ 12, 14; Estep Dep. 124:13-25 (stating that he did not notify Ha before January 2016 that he was "going out on leave")).

Based on these facts, Forever 21 contends that the circumstances here are indistinguishable from the facts in *Huitt*. (Def.'s Mot. Summ. J. 12.) Specifically, Forever 21 argues that like the plaintiff in *Huitt*, the record establishes that Estep went out on medical leave before it could issue "a corrective active plan." (Def.'s Mot. Summ. J. 12 (citing *Huitt*, 216 F. Supp. 3d at 1185)). Subsequently, the employer in *Huitt* terminated the plaintiff following the exhaustion of the plaintiff's FMLA leave and a period of unpaid leave. *Id.* The district court granted summary judgment for the employer on a finding that plaintiff was unable to show she was a qualified individual at the time of her termination. *Id.*

In opposition, Estep argues that before he left on sick leave, he never received a negative performance review or was otherwise notified that he was underperforming. Estep's most recent Performance Review occurred in May 2015, and spanned his positions as both store manager and district manager. (Cambreleng Decl. Ex. 2 (noting the review period as "03/01/2014 – 02/28/2015)). Estep received a 3.2/ 5.0 "Calculated Rating" and "Overall Rating Meets Expectations." (Cambreleng Decl. Ex. 2 at 4; *see also id.* at 2 (stating "you are doing a great job in your first 4 months of being a DM")). Furthermore, Ha's written recap of her December 2015 phone call with Estep makes no reference to the Pine Street store as the worst she had seen in eighteen years. (Cambreleng Decl. Ex. 9.) In fact, as part of a "DM Alignment Proposal," in

March 2016, Ha designated Estep as the district manager for the Sacramento and Washington districts. (Cambreleng Decl. Ex. 25; *see also* Ha Dep. 50:2-16 (testifying that as of March 2016, "the communication with HR was that, when [Estep] does come back, we'll give him equal position at that time")). Despite Ha's apparent intention to retain Estep as of March 31, 2016, Ha greenlighted the decision to terminate Estep shortly after she learned of his cancer diagnosis in June 2016. (Ha Dep 49:4-9.) Additionally, contrary to Ha's testimony that Estep was "a terminable DM," Forever 21 documented Estep's "Reason for Separation" as an "Involuntary-Layoff/Position Elimination." (Cambreleng Decl. Ex. 30.) Furthermore, Forever 21 offered Estep a severance package despite Forever 21's general policy not to provide severance to employees terminated for performance issues. (Durham Dep. 39:15-22 (acknowledging Forever 21's practice of providing severance to employees involuntarily terminated due to the elimination of a position)). Finally, it is undisputed that Forever 21 did not eliminate Estep's position but, instead, replaced him with another district manager. (Ha Dep. 87:11-15.)

Estep distinguishes the decision in *Huitt*. (Pl.'s Resp. 17.) In particular, the employer in that case (1) documented the plaintiff's poor prior performance over a period of months, (2) drafted a corrective action plan, and (3) issued a review grade of "needs improvement." (*Id.* (citing *Huitt*, 216 F. Supp. 3d at 1182-86)). Additionally, the plaintiff in *Huitt* was on leave for eighteen months, with no anticipated return date. *Id.* at 1185. Finally, the plaintiff in that case conceded that she was unable to perform the position. *Id.* at 1189 ("Moreover, Plaintiff testified at deposition that 'starting in September of 2012, [she could not] have performed the central functions of [her] job with or without accommodation,' and she remained unable to do so up to and after the date of her termination letter on March 13, 2014." (citation to record omitted)). The Court agrees that the facts in *Huitt* are distinguishable from the circumstances here.

Viewing the evidence in the light most favorable to Estep, there are disputed factual issues from which a reasonable juror could find that Estep was a qualified individual who could have performed his job duties with a reasonable accommodation of additional leave. Although Forever 21 presents some evidence that Estep's performance was not meeting company standards in late 2015, the timing of Forever 21's decision to terminate Estep and the reasons for the termination remain disputed factual issues. Accordingly, the Court denies Forever 21's request for summary judgment on the ground that Estep was unable to perform the essential functions of the district manager job with or without a reasonable accommodation.

### b.    Did Estep Request a Reasonable Accommodation?

An employer must provide reasonable accommodations to individuals with disabilities. *See* ORS § 659A.112(2)(e) (authorizing a claim for disability discrimination based on a failure to make a reasonable accommodation). However, the duty to accommodate, including the obligation to engage in an interactive process, does not arise until the "employer becomes aware of the need for accommodation." *Wessels*, 2016 WL 1589894, at *15 (citing *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001)). With one exception not relevant here, well established law requires the employee to request a reasonable accommodation.[4] *See Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1114 (9th Cir. 2000) (en banc) (holding that an employer's duty to engage in an interactive process to find a reasonable accommodation "is triggered by an employee or an employee's representative giving notice of the employee's disability and the

---

[4] "The exception to the general rule than an employee must make an initial request applies . . . only when the employer (1) knows that the employee has a disability, (2) knows, or has reason to know, that the employee is experiencing workplace problems because of the disability, and (3) knows, or has reason to know, that the disability prevents the employee from requesting a reasonable accommodation." *Brown v. Lucky Stores*, 246 F.3d 1182, 1188 (9th Cir. 2001) (quotations and citation omitted).

desire for an accommodation"), *vacated on other grounds,* 535 U.S. 391 (2002); *Brown,* 246 F.3d at 1188 (finding no duty to provide a reasonable accommodation where none was requested); *see also Brown v. Verizon Directories Sales Corp.,* No. 3:02-cv-507-MO, 2004 WL 1315845, at *3 (D. Or. Mar. 31, 2004) ("In other words, an employee must give notice of a disability and their desire for an accommodation to trigger the employer's duty to implement a reasonable accommodation.").

Forever 21 argues that Estep's request for an accommodation was not reasonable because he required long-term medical leave. (Def.'s Reply 9.) Relying on the Seventh Circuit's decision in *Severson v. Heartland Woodcraft, Inc.,* 872 F.3d 476, 479 (7th Cir. 2017), Forever 21 contends that Estep's "need for a year of leave is not a reasonable accommodation . . . ." (Def.'s Reply 9-10.) In *Severson,* the Seventh Circuit held that "[a]n employee who needs long-term medical leave cannot work and thus is not a 'qualified individual' under the [American with Disabilities Act]." *Id.* at 479; *see also id.* at 481 (finding that "a medical leave spanning multiple months does not permit the employee to perform the essential functions of his job"). Alternatively, Forever 21 argues that Estep never requested an accommodation. (Def.'s Mot. Summ. J. 15; *see also* Def.'s Reply 11.)

With regard to Forever 21's assertion that Estep never requested a reasonable accommodation, the parties agree that in January 2016, Estep notified Ha that he was on medical leave and sought FMLA leave until February 16, 2016. (Cambreleng Decl. Exs. 16 and 17.) Shortly after that leave was approved, Estep sought additional leave. (Cambreleng Decl. Ex. 24.) In June 2016, Estep provided new documentation seeking additional "estimated" leave until October 2016. (Cambreleng Decl. Ex. 28.) Ultimately, Estep could not return to work full-time until January 1, 2017. (Estep Dep. 174:6-25.)

The Court finds that Estep's multiple requests for leave to treat and recover from cancer were adequate notice of the need for an accommodation of extended leave. It is undisputed that before his involuntary termination, Forever 21 had notice of Estep's cancer diagnosis and his need for additional leave to treat the cancer. *See, e.g., Barnett*, 228 F.3d at 1122 (holding that the interactive process may be "triggered either by a request for accommodation by a disabled employee or by the employer's recognition of the need for such an accommodation"); *Roloff v. SAP Am., Inc.*, 432 F. Supp. 2d 1111, 1119 (D. Or. 2006) ("The law is clear that a plaintiff does not need to use any magic words to initiate the interactive accommodation process with his or her employer." (citing *Barnett*, 228 F.3d at 1122 ("'An employee requesting a reasonable accommodation should inform the employer of the need for an adjustment due to a medical condition using 'plain English' and need not mention the ADA or use the phrase 'reasonable accommodation.'") (internal quotation marks omitted))); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) ("An employee is not required to use any particular language when requesting an accommodation but need only inform the employer of the need for an adjustment due to a medical condition." (quotation marks and citation omitted)).

Turning to the question of whether Estep's need for an extended leave of up to one year is *per se* unreasonable, the Court declines to follow the Seventh Circuit's holding in *Severson*. Established Ninth Circuit law holds that "an extended unpaid medical leave may be a reasonable accommodation if it does not pose an undue hardship on the employer." *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) ("In the summary judgment context, a court should weigh the risks and alternatives, including possible hardships on the employer, to determine whether a genuine issue of material fact exists as to the reasonableness of the accommodation."). On this record, Forever 21 cannot establish that Estep's request for an

extended medical leave was *per se* unreasonable. Specifically, Forever 21 has made no showing of an undue hardship if Estep had remained on leave for another six months. (Def.'s Reply 8 n.8 ("Plaintiff has correctly pointed out that Forever 21 has not raised undue hardship in its motion.")). In addition, Estep's requested leave was not indefinite. Rather, the undisputed record shows that before Forever 21 terminated his employment in June 2016, Estep notified Forever 21 that he could return to work full-time in January 2017.

Viewing the evidence in the light most favorable to Estep, there are disputed factual issues regarding whether extended medical leave was a reasonable accommodation, including whether such an extended leave posed an undue hardship on Forever 21.[5] Accordingly, the Court denies Forever 21's request for summary judgment on the ground that Estep's request for extended medical leave was unreasonable.

### 2. Causal Connection

Forever 21 also argues that Estep is "not able to meet the causation element of his termination claim." (Def.'s Mot. Summ. J. 14.) According to Forever 21, there is neither direct nor circumstantial evidence of discrimination in the record. (*Id.*)

### a. Estep's *Prima Facie* Case for Causation

At the *prima facie* stage, a plaintiff's required proof "is minimal and does not even need to rise to the level of a preponderance of evidence." *Wallis*, 26 F.3d at 889. Estep's temporal proximity evidence—i.e., Ha learned of his cancer diagnosis in June 2016, and he was terminated that same month (Ha Dep. 49:3-9; Cambreleng Decl. Ex. 30)—is sufficient to satisfy

---

[5] There is no dispute that Forever 21 did not engage in an interactive process. While such a failure does not create an independent basis for liability, Forever 21's failure to engage is "still relevant to the failure to reasonabl[y] accommodate claims." *Reaves v. Nexstar Broadcasting, Inc.*, 327 F. Supp. 3d 1352, 1372 (D. Or. 2018).

his *prima facie* case as to the causation element. *See, e.g., Dawson v. Entek Intern.*, 630 F.3d 928, 937 (9th Cir. 2011) ("In some cases, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of both the *prima facie* case and the showing of pretext.") The burden shifts to Forever 21 to provide a legitimate, nondiscriminatory explanation for Estep's termination.

### b.        Forever 21's Legitimate Nondiscriminatory Explanation

Once a plaintiff establishes his *prima facie* case, the burden shifts to defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Curley*, 772 F.3d at 632; *Huitt*, 216 F. Supp. 3d at 1187. At this stage, defendant's burden is one of production as the ultimate burden of persuasion remains with the plaintiff at all times. *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123-24 (9th Cir. 2000) ("The burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action.").

Forever 21 asserts that it discharged Estep because of his poor performance in late 2015, but Estep began his sick leave before Forever 21 had an opportunity to terminate him. In support of its stated reason for Estep's discharge, Forever 21 relies on the same evidence it submitted in support of its argument that Estep could not perform the essential functions of the district manager position. (*See* Section I.B.1.a. above). Poor performance is a legitimate, nondiscriminatory reason for Forever 21's decision to terminate Estep. The burden shifts to Estep to show pretext.

### c.        Evidence of Pretext

Estep must demonstrate that a disputed factual issue exists with regard to Forever 21's explanation for Estep's termination, *i.e.*, that Forever 21's proffered reason is a pretext for discrimination. A plaintiff can establish pretext in two ways: "(1) indirectly, by showing that the

employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang*, 225 F.3d at 1127 (internal quotation marks omitted). To survive summary judgment, a plaintiff must establish only that a reasonable fact finder could conclude "that discrimination was the real reason" for the defendant's actions. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 n.2 (9th Cir. 1996).

Turning to pretext, Estep argues that the temporal proximity between his illness and the termination "allows an inference that the one caused the other." (Pl.'s Resp. 21 (and case citations therein)). Estep also maintains that Ha's testimony establishes that Estep was terminated from his employment because he needed additional time off to continue his cancer treatment. (Pl.'s Resp. 21-22).

For the reasons detailed in Section I.B.1.a. above (i.e., temporal proximity, no adverse performance reviews, no notice to Estep of sub-standard performance, layoff as stated reason for separation, a severance package provided to Estep, Ha's apparent intention to retain Estep as of March 31, 2016, before she learned of Estep's cancer diagnosis, and no evidence of a definitive decision to terminate Estep before Ha learned of his cancer diagnosis), the Court finds that disputed issues of material fact remain regarding Forever 21's reasons for terminating Estep's employment. Viewing the facts in the light most favorable to Estep, the Court finds that a reasonable juror could find a discriminatory reason for Forever 21's termination of Estep. Accordingly, the Court denies Forever 21's request for summary judgment.

## II.     ESTEP'S MOTION FOR LEAVE TO AMEND COMPLAINT

Estep seeks leave to amend his complaint to include a claim for punitive damages. (Pl.'s Mot. Leave to Amend 1.) Estep contends that he reserved the right to "amend his pleading at any time to add punitive damages" (Compl. ¶ 23), and "[t]he addition of punitive damages could not

have been done prior to May 19, 2017, as the testimony that is the basis for the motion was not made until almost a year after the close of the date for amendments to pleadings." (Pl.'s Mot. Leave to Amend 2.) As such, Estep argues that good cause exists under Fed. R. Civ. P. 16(b)(4) to amend the Scheduling Order, and that the proposed amendments satisfy Rule 15's requirements to amend the complaint.[6] (Pl.'s Mot. Leave to Amend 8-9.) Forever 21 opposes Estep's request on the grounds of inexcusable delay and futility. (Def.'s Opp. 3-5.)

### A.    Inexcusable Delay

Forever 21 argues that "the factual allegations that [Estep] relies upon to support his [request to amend] are either based upon information that [Estep] had well before depositions were taken or are unsupported by the record." (Def.'s Opp. 3.) Estep acknowledges that some of the documents he relies on for his punitive damages claim were available previously. (Pl's Reply 1 ("This is true.")). However, Estep argues that prior to March-May 2018, he lacked sufficient evidence to support a claim for punitive damages, i.e., "the malicious nature of [Forever 21's] termination of [] Estep." (Pl.'s Reply 1-2; *see* Cambreleng Supp. Decl. Ex. 14 (regarding Ha deposition testimony dated April 25, 2018); *id.* at Ex. 15 (regarding document production dated March 9, 2018); *id.* at Ex. 16 (regarding document production dated April 25, 2018)).

The record demonstrates that Estep learned of facts relevant to his punitive damages claim for the first time in April and May of 2018, and he filed his motion for leave to amend shortly thereafter (on May 24, 2018). The Court finds no inexcusable delay here, and finds that good cause exists to modify the Scheduling Order.

---

[6] Rule 16(b)(4) provides: "A schedule may be modified only for good cause and with the judge's consent."

Rule 15(a)(2) provides, in relevant part: "[A] party may amend its pleading . . . with the court's leave. The court should freely give leave when justice so requires."

**B.     Futility**

Forever 21 also argues that Estep's "claim for punitive damages is unsupported by the undisputed facts, therefore, his amendment adding such a claim is futile and should be rejected." (Def.'s Opp. 5.) The Court disagrees.

In Oregon, punitive damages may be awarded as "a penalty for conduct that is culpable by reason of motive, intent, or extraordinary disregard of or indifference to known or highly probable risks to others." *Aandor by Affatigato v. United Air Lines, Inc.*, 303 Or. 505, 517 (1987). However, to be entitled to a punitive damages award, a plaintiff must show that the defendant's "degree of culpability" is "greater than inattention or simple negligence." *Badger v. Paulson Inv. Co., Inc.*, 311 Or. 14, 28 (1991); *see also* ORS. § 31.730(1) (providing that punitive damages "are not recoverable in a civil action unless it is proven by clear and convincing evidence that the party against whom punitive damages are sought has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others").

Turning to Estep's claim for punitive damages, the Court finds that the allegations set forth in Estep's amended complaint are sufficient to support a claim for punitive damages, as a reasonable juror could find that Forever 21 acted with malice by terminating Estep upon learning that he had cancer. *See Ogelsby v. Western Stone & Metal Corp.*, 230 F. Supp. 2d 1184, 1191 (D. Or. 2001) (finding that sufficient evidence supported the jury's finding that the employer "harbored a malicious intent toward [the employee] demonstrated by the manner in which he was terminated"). Accordingly, the Court grants Estep's motion for leave to amend his complaint.

## CONCLUSION

For the reasons stated herein, the Court GRANTS Estep's Motion for Leave to Amend Schedule to Allow Leave to File an Amended Complaint (ECF No. 17), and DENIES Forever

21's Motion for Summary Judgment (ECF No. 20). Estep shall immediately file his amended complaint.

**IT IS SO ORDERED.**

DATED this 13th day of November, 2018.

_Stacie F. Beckerman_
_____
STACIE F. BECKERMAN
United States Magistrate Judge